LAW OFFICE OF
**PETER A. ROMERO**

promero@romerolawny.com

David D. Barnhorn
dbarnhorn@romerolawny.com

July 19, 2019

*Via ECF*
Hon. Sandra J. Feuerstein
United States District Judge
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

        Re:   *Narcisso Genao v. 112 Hospitality LLC, et al.*
                Docket No.: 18-cv-07461 (SJF) (AKT)

Dear Judge Feuerstein:

      As you are aware, this firm represents Plaintiff Narcisso Genao (collectively as "Plaintiff"), in the above-referenced matter against Defendants 112 Hospitality LLC d/b/a The Meadow Club (the "Meadow Club"), JKK Restaurants LLC d/b/a The Curry Club (the "Curry Club"), Kulwant Wadhwa, Karin Wadhwa, and Indu Kaur (collectively as "Defendants"). In his Complaint, filed on December 31, 2018, Plaintiff brings claims for alleged unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), as well as other alleged violations of the New York Labor Law ("NYLL").[1] D.E. 1. On January 30, 2019, this matter was referred to the EDNY Mediation program. D.E. 7. On March 14, 2019, Defendants, through their counsel, filed an Answer to the Complaint, which denied the allegations made by Plaintiff. D.E. 17. On May 10, 2019, the parties reached a settlement at the mediation with the assistance of the mediator, Giulio Zanolla. We now seek approval of the parties' settlement of Plaintiff's FLSA claims pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015).

The parties have memorialized their resolution in a Settlement and Release Agreement ("Agreement"), attached hereto as Exhibit A. The release set forth in the Agreement is limited to claims arising under the FLSA and NYLL. The Agreement does not contain any confidentiality or non-disclosure provision. The parties have agreed to a mutual non-disparagement provision that contains the required carve out provision permitting parties to make truthful statements about this lawsuit and their experiences litigating this matter. Ramos Pelico v. PGNV, LLC, 2019 WL 2710176, at *3 (S.D.N.Y. June 28, 2019) (approving non-disparagement clause where "the non-disparagement clause is mutual and includes an explicit carve-out for truthful statements. The Agreement provides that the mutual non-disparagement clause 'shall not apply to truthful statements made by any of the Parties regarding their experiences in the Litigation and/or the underlying facts of any claim or defense.'"); Abreu

---

[1] The parties do not seek the Court's approval with respect to the settlement of Plaintiff's non-FLSA claims as there is no requirement for the Court to do so.

LAW OFFICE OF PETER A. ROMERO PLLC  ·  LABOR AND EMPLOYMENT LITIGATION
825 Veterans Hwy, Hauppauge, New York 11788  -  (631) 257-5588  ·  overtimelawny.com

v. Congregation Yetev Lev D'Satmar Meats & Poultry, Inc., 2019 WL 2526087, at *7 (E.D.N.Y. June 19, 2019) (quoting Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 180 (S.D.N.Y. 2015) (non-disparagement clause "'must include a carve-out for truthful statements about plaintiffs' experience litigating their case.'"); Payano v. 1652 Popham Assocs., LLC, 2019 WL 464231, at *4 (S.D.N.Y. Feb. 6, 2019) (collecting cases) (approving non-disparagement clause "that contains a carve out for truthful statements concerning the plaintiff's experience litigating the action." and noting "the overwhelming weight of authority has approved such provisions"); Elamrani v. Henry Limousine, Ltd., 2018 WL 3518505, at *3 (E.D.N.Y. July 19, 2018) (holding that "while the agreement does contain a mutual non-disparagement clause, it also contains carve-out language permitting plaintiffs to make truthful statements about plaintiffs' experience in litigating their claims. The Court finds that the agreement's language adequately protects plaintiffs' interests in accordance with the goals of the FLSA, and approves the agreement accordingly.)

The Agreement is reasonable and in the best interest of Plaintiff. The parties agreed to fully and finally resolve all of Plaintiff's claims by having Defendants pay Plaintiff a total of $22,500. This settlement is secured by confessions of judgment from all Defendants. Plaintiff believes the agreement is fair and reasonable under the circumstances. The parties held very different views about the merits of Plaintiff's claims. The parties' respective views differed vehemently as to the extent of overtime hours worked by Plaintiff, if any, per week and as to whether Plaintiff was ever employed by the Curry Club. Accordingly, the parties disagree about which Defendants, other than the Meadow Club, constituted Plaintiff's employers. Due to the fact-intensive nature of these inquiries, a resolution of this dispute would require full discovery, depositions, potential partial summary judgment motion practice and a trial.

Significantly, the Meadow Club suffered a fire on July 13, 2018 and has been closed ever since. This circumstance seriously limits the amount of money available for a settlement in this action. Accordingly, given the disputes regarding the merits and the financial circumstances caused by the closing of the Meadow Club, resolving the action on behalf of the Plaintiff at this early juncture provides certainty in that Plaintiff will receive compensation for his alleged unpaid overtime wages.

In light of the significant litigation risks outlined above, all parties believe that this settlement is fair. Although there is a possibility that Plaintiff could recover higher damages if the case proceeded to trial, there is also the possibility that he could receive much lower damages, or nothing at all, and as such, the risks and uncertainties discussed above are substantial. Indeed, given the financial circumstances discussed above, Plaintiff could succeed at trial and still be unable to recover any sums awarded in a judgment. Under the agreement, Plaintiff will be able to recover settlement funds more expeditiously, with more certainty and substantially less risk, than a trial judgment.

Additionally, the reasonableness of this settlement is also assured by the involvement of a mediator. Indeed, the presence of a mediator "provides assurance that the settlement was not the product of collusion." Bilbao v. LCS Enters. Inc., 2018 WL 1399199, at *2 (S.D.N.Y. Mar. 19, 2018); see also Hernandez v. Anjost Corp., 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."); Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 618-

619 (S.D.N.Y. 2012) (citing <u>In re Giant Interactive Grp., Inc. Sec. Litig.</u>, 279 F.R.D. 151, 159-160 (S.D.N.Y. 2011)) (explaining parties entitled to a presumption of fairness where mediator facilitated arms-length settlement). Accordingly, the settlement achieved clearly reflects an arms'-length negotiation absent from fraud or collusion and is a reasonable compromise over the contested issues in this matter.

As set forth in the attached Agreement, the parties have agreed to settle this action, pursuant to an appropriately limited release, for a total settlement amount of $22,500 (the "Settlement Amount"). This amount includes $8,417.93 in attorneys' fees and costs, consisting of $7,041.03 in attorneys' fees and $1,376.90 in costs. The costs relate to the filing fee for the Complaint, service of the Complaint on the Defendants and the costs of Plaintiff's share of the mediation fee, which Plaintiff's counsel advanced. The attorney's fee represents one-third (33.3%) of the total settlement amount after deducting for expenses and is reasonable. Plaintiff's counsel researched and investigated the claims, conducted an in-depth and detailed inquiry regarding Plaintiff's job duties, hours worked and compensation received, commenced this action, prepared a detailed assessment of Plaintiff's damages, and negotiated the settlement at mediation. Due to the contingent nature of the case, Plaintiff's counsel undertook these efforts with no ultimate guarantee of compensation. Plaintiff's counsel was zealous in the pursuit of Plaintiff's litigation objectives and secured a favorable result on the Plaintiff's behalf. The settlement amount will be made available to Plaintiff without the uncertainty and delay of trial.

In short, the settlement is the result of substantial negotiations and compromise by both parties. The parties believe that the proposed settlement is completely fair, reasonable, and adequate to the Plaintiff in light of the risks of litigation and should be approved.

We appreciate Your Honor's attention to this matter.

> Respectfully submitted,
>
> _/S/ David D. Barnhorn, Esq.__
> DAVID D. BARNHORN, ESQ.

C:   All Counsel of Record via ECF